IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| CleanFuel USA, Inc., | § | Case No. 16-10398-HCM |
| | § | Chapter 11 |
| Debtor. | § | |

**DEBTOR'S MOTION FOR AUTHORITY TO PAY
CERTAIN PRE-PETITION EMPLOYEE OBLIGATIONS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW CleanFuel USA, Inc., the debtor and debtor-in-possession ("CFUSA" or "Debtor") in this chapter 11 case, by and through the undersigned attorneys, files this Motion for Authority to Pay Certain Pre-Petition Employee Obligations (the "Motion"). In support of the Motion, Debtor states as follows:

**BACKGROUND**

1. On April 3, 2016 (the "Petition Date"), Debtor filed its voluntary petition for relief and thereby commenced this bankruptcy case under chapter 11, title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court" or "Court").

2. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, Debtor is operating its business as a debtor-in-possession.

3. No trustees or examiners have been appointed, and no official committees of creditors or equity interest holders have yet been established.

AUS-6238612-1 527825/1

4. Founded in 1993, CFUSA was the first in the U.S. industry to develop liquid propane fuel injection systems. For over 20 years, CFUSA has maintained a reputation for providing safe, reliable, and cost-effective vehicles, stations, and dispensers that comply with environmental regulations. Offering turnkey fuel and refueling infrastructure solutions, propane-powered engine systems and conversions, and fleet management programs, CFUSA helps customers take advantage of U.S.-produced propane fuel to drive down the costs and emissions related to transportation of goods and services across the country. Research and development continues to be a core company function. CFUSA is headquartered in Georgetown, Texas with vehicle engineering offices in Wixom, Michigan. CFUSA has experienced cash flow difficulties and has filed this bankruptcy case to restructure its debt obligations.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 105(a), 1107(a), 1108 and other applicable sections of the United States Bankruptcy Code. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## RELIEF REQUESTED

6. As of the Petition Date, Debtor employed 34 employees ("Staff") and 3 executives ("Executives") (Staff and Executives collectively, the "Employees"). The Employees receive compensation in the form of, among other things, wages, salaries, reimbursement of expenses, including vacation, severance, and sick leave pay earned by the Employees (collectively, "Employee Obligations"). The Employee Obligations include, but are not limited to, claims for the following:

a. <u>Wages and Salaries</u>. Debtor pays its salaried employees through a third-party service provider, Inspirity, Inc. ("Inspirity"), on a semi-monthly basis ("Wages and Salaries"). Debtor remits the amount of its payroll to Inspirity prior to the end of the period in which payroll is due, and Inspirity issues the payroll checks and makes the direct deposits on the 15th and the end of each month from accounts maintained by Inspirity. As of the Petition Date, all current Employees were owed Wages and Salaries for the period ending April 3, 2016, in the total amount of $64,617.24. This Motion seeks authority for Debtor to pay the pre-petition Wages and Salaries in the total amount of $53,240.25 owed, as of April 3, 2016, to the Staff who were actively employed on the Petition Date and who are currently employed by Debtor, none of which exceeds $12,475 per individual. The Debtor also seeks authority to pay the Executives the total aggregage amount of $11,376.99 for pre-petition Wages and Salaries owed as of April 3, 2016.

b. <u>Reimbursable Business Expenses</u>. In the ordinary course of its business, Debtor routinely reimburses certain Employees for certain expenses incurred in the course and scope of their employment which expenses include, travel, auto expenses, meals, supplies and miscellaneous business expenses (the "Business Expenses"). The Debtor currently owes approximately $8,790.70 for business expenses that were incurred pre-petition. All such expenses were incurred on behalf of the Debtor and in the furtherance of Debtor's business, and the Employees understood at the time they incurred such Business Expenses that they would be timely reimbursed for such Business Expenses. Debtor seeks approval only to pay the customary Business Expenses owed to current Employees.

c. <u>Employee Deductions</u>. In addition to compensation, Debtor deducts from its Employees' paychecks some or all of the following items ("Employee Deductions") for payroll taxes, the employees' portion of FICA taxes, and legally ordered deductions, such as garnishments, child support and tax levies. Debtor regularly deducts the Employee Deductions from the Employees' paychecks and forwards it to the appropriate third party recipients. These Employee Deductions are not property of the bankruptcy estate; they are funds held in trust. Payment of the Employee Deductions. Therefore, will not prejudice any creditor or interested party.

**BASIS FOR RELIEF**

7. With respect to each of the Employee Obligations, Debtor believes that a failure to honor these claims will severely threaten current Employee morale and loyalty at a time when the Employees' continued dedication and support is critical to Debtor's reorganization efforts. Debtor believes that any uncertainty or anxiety aroused with regard to these matters will be detrimental to the Debtor's ability to maximize the value of the bankruptcy estate and Debtor's ability to retain its Employees. The avoidance of such threats to the welfare of the Employees, and therefore to the efforts of Debtor to maximize the value of the bankruptcy estate, can and should be avoided by granting Debtor authority requested herein. The granting of such relief is in the best interests of Debtor, its Employees, the bankruptcy estate and all interested parties.

8. Most of Debtor's Employees rely exclusively on receiving its full compensation as and when due to continue to pay its daily living expenses. These Employees will face exposure to potentially significant financial hardship if Debtor is not permitted to pay the Employee Obligations. It is essential, therefore, that the payroll cycle not be interrupted.

9. With respect to those Employee Deductions that Debtor makes at the direction of courts or other governmental authorities (i.e. garnishments), Debtor's failure to continue making such payments may not only subject Employees to hardship and potential legal action, but may also subject Debtor to legal actions for such non-compliance.

## AUTHORITY FOR THE RELIEF REQUESTED

10. The Debtor submits that the Court is authorized to grant the relief requested pursuant to Section 105(a) of the Bankruptcy Code, which provides in relevant part that "the court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." Further, Section 105(a), in conjunction with Sections 1107(a) and 1108 of the Bankruptcy Code, authorize the Court to enter such an order approving this Motion.

11. As a fiduciary to the creditors and equity holders of the bankruptcy estate, Debtor is obligated to protect and preserve the value of the bankruptcy estate. 7 Collier on Bankruptcy ¶ 1107.02[4] (15th ed.). Ensuring that the Employees are timely paid and remain on the job is essential to the preservation of the value of the bankruptcy estate and the ability of the Debtor to maximize the value of the bankruptcy estate in a fashion that is best for all interested parties. Therefore, payment of the Employee Obligations to maintain operations is the most practical mechanism for accomplishing the goals of maximizing the value of Debtor's assets.

12. The amount Debtor now seeks authority to pay as of Wages and Salaries are entitled to priority status under Section 507(a)(4) of the Bankruptcy Code. As a result, the Employee Obligations must be paid in full in order to confirm a chapter 11 plan. The payment of the Employee Obligations, therefore, would only affect the timing, not the amount, of the Employee Obligations.

13. Accordingly, payment of the Employee Obligations and continuation of all Employee benefit plans and policies are equally vital to the health and welfare of the Employees of the Debtor and also the Debtor's ability to maximize the value of its bankruptcy estate without imposing possible immediate and irreparable harm to the Debtor's valued Employees or to the bankruptcy estate.

14. In addition, the authority to grant this relief is provided by the Doctrine of Necessity. Courts have specifically authorized payment under the Doctrine of Necessity to satisfy pre-petition claims of employees. In *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989), the bankruptcy court cited the Doctrine of Necessity and Section 105(a) of the Bankruptcy Code, and authorized the debtor to make these type payments in order to retain its employees and to maintain positive employee morale.

15. For these reasons, Debtor requests that the Court exercise its power under Section 105(a) of the Bankruptcy Code, the Doctrine of Necessity, and other applicable authorities to approve payment of the Employee Obligations as relief necessary to enable the Debtor to fulfill its duties as debtor-in-possession and to maximize the value of the bankruptcy estate.

16. Further, Debtor respectfully requests that the Court include, in any order granting this Motion, authorization for and a directive to the banks and financial institutions of the Debtor to process, honor, receive and pay all checks and fund transfer requests made by the Debtor pertaining to its payroll or to the Employee Obligations set forth herein. Debtor represents that the amounts requested pursuant to this motion shall be paid in accordance with the Interim Budget approved by the DIP Lenders and subject to the Proposed Interim Order Authorizing the Debtors to Incur Postpetition Secured Super-priority Indebtedness.

WHEREFORE, Debtor respectfully requests that the Court enter an Order granting the following relief:

A. Approving the Motion in its entirety;

B. Authorizing Debtor to pay the pre-petition Wages and Salaries in the total amount of $53,240.25 owed, as of April 3, 2016, to the Staff who were actively employed on the Petition Date and who are currently employed by Debtor, none of which exceeds $12,475 per individual;

C. Authorizing Debtor to pay the pre-petition Wages and Salaries in the total amount of $11,376.99 owed, as of April 3, 2016, to the Executives who were actively employed on the Petition Date and who are currently employed by Debtor, none of which exceeds $12,475 per individual;

D. Authorizing Debtor to pay customary Business Expenses owed to current Employees;

E. Authorizing Debtor to pay Employee Deductions to the appropriate third party recipients;

F. Granting such other authority and relief as is necessary and appropriate under the circumstances.

AUS-6238612-1 527825/1

Dated: April 6, 2016            Respectfully submitted,

C. DANIEL ROBERTS & ASSOCIATES, P.C.
1602 E. Cesar Chavez
Austin, Texas 78702
Telephone: (512) 494-8448
Facsimile: (512) 494-8712


By:     /s/ C. Daniel Roberts
      C. Daniel Roberts
      Texas Bar No.: 16999200
      droberts@cdrlaw.net

*and*

Kell C. Mercer, PC
1602 E. Cesar Chavez Street
Austin, Texas 78702
Telephone: (512) 627-3512
Facsimile: (512) 597-0767
kell.mercer@mercer-law-pc.com


By:     /s/ Kell C. Mercer
      Kell C. Mercer
      Texas Bar No. 24007668


PROPOSED COUNSEL FOR DEBTOR-IN-POSSESSION


**CERTIFICATE OF SERVICE**

    I hereby certify that on April 6, 2016, a true and correct copy of the foregoing pleading is being served via electronic transmission on all parties listed on the attached Service List.

        /s/ *Kell C. Mercer*
        Kell C. Mercer