**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: May 03, 2016.**

_____
**H. CHRISTOPHER MOTT
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CLEANFUEL USA, INC. | § | CASE NO. 16-10398 HCM |
| (Debtor) | § | (Chapter 11) |
| | § | |

**AGREED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL
AND PROVIDING ADEQUATE PROTECTION**

On May 2, 2016, the Court conducted a hearing (the "Final Hearing") on the Debtor's Motion for Use of Cash Collateral pursuant to Bankruptcy Code §363(c) and Federal Bankruptcy Rule 4001(b) and Local Bankruptcy Rule 4001(b) and First Amended Motion to Use Cash Collateral (collectively, the "Motion"), which were filed by Cleanfuel USA, Inc. ("CFUSA" or "Debtor") for entry of interim and final orders authorizing CFUSA to use cash collateral. The Court entered the Agreed Interim Order Authorizing Use of Cash Collateral and Providing Adequate Protection (the "Interim Order") on April 13, 2016. ICOM North America, LLC filed an objection to the Motion. Upon review of the Motion and all relevant pleadings filed with this Court, the relief requested therein and the evidence and representations adduced at the interim

hearing, this Court overrules the objection of ICOM North America, LLC and makes the following findings of fact and conclusions of law:

1. CFUSA is unable to pay the reasonable expenses of its ongoing operations without permission for use of collateral and cash collateral in which security interests and liens are claimed by The Ed Rachal Foundation ("Lender"). Ongoing operations to preserve the going concern value of the CFUSA's assets would be in the best interests of the CFUSA and its creditors.

2. Notice of the Interim Order and hearing on the Motion was served by United States mail, facsimile, electronic mail or overnight delivery, prior to this hearing on Lender, the United States Trustee, and the Debtor's twenty largest unsecured creditors and any parties asserting liens against property of the Estate by virtue of the filing of a current UCC Financing Statement. Such notice is sufficient and complies with Bankruptcy Rule 4001.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(2)(M) and 1334.

4. Notice of the Motion and opportunity for hearing were adequate and appropriate under the circumstances of this case.

5. The terms and conditions for the Debtor to provide adequate protection to Lender are proposed in good faith.

6. The operating expenses proposed to be paid by the Debtor for the period described the Budget attached hereto as **Exhibit A** (the "Budget") are reasonable and necessary to prevent irreparable injury, loss, or damage to the Debtor's estate. Lender has agreed to the use of cash collateral subject to the stipulations contained herein and the provisions of this Order. No amounts shall be paid to professionals without court order.

7. The proposed form of this Order submitted by the Debtor complies with the Local Bankruptcy Rules for the United States Bankruptcy Court for the Western District of Texas, except as described in the Motion and the disclosures of counsel at the hearing on the Motion.

8. Debtor agrees and stipulates as follows:

A. Lender holds a first priority perfected security interest and liens in all assets of the Debtor including, but not limited to, Debtor's inventory, accounts, accounts receivable, equipment, intellectual property, general intangibles and the proceeds thereof (the "Pre-Petition Collateral

B. Debtor was on the filing date of this case indebted to Lender in the amount of $16,658,597 (the "Pre-Petition Debt"). Debtor has no defenses, offsets or counterclaims to the Pre-Petition Debt and has no avoidance rights with respect to the liens on Pre-Petition Collateral.

C. Any party in interest (except for the Debtor) may contest the validity or extent of Lender's pre-petition lien claims by filing an adversary proceeding stating such objection by no later than August 1, 2016. Any objection not asserted by that date shall be waived and overruled.

IT IS HEREBY ORDERED that, unless modified by subsequent order of this Court, the following terms shall apply:

1. <u>Automatic Stay and Use of Cash Collateral</u>.

a. <u>Authorization</u>. Subject to this Order, Debtor is hereby authorized under 11 U.S.C. 363(a), (c)(1), and (c)(2) to use Lender's collateral and cash collateral to pay only the permitted expense in the amount, for the purposes and in the time period described in the Budget. Except as herein provided, the automatic stay of

Bankruptcy Code § 362(a) shall continue in effect and until further modified or terminated by the Court.

b. <u>Adequate Protection Obligations</u>. Debtor is hereby authorized to protect Lender under 11 U.S.C. §§ 361 and 363, as set forth in this Order, for the Debtor's post-petition use and consumption of Lender's "Pre-Petition Collateral" and for the post-petition diminution in value of Lender's Pre-Petition Collateral (the "Adequate Protection Obligations").

c. <u>Prohibited Transactions</u>. Debtor shall not, except as set forth herein or except upon notice and opportunity for hearing to Lender: (a) enter into transactions for the sale out of the ordinary course of business of any property in which Lender claims a lien; (b) obtain credit under 11 U.S.C. § 364 (c) or (d) without the written consent of Lender; or (c) grant any liens or priorities on a parity with or senior to Lender's without Lender's written consent.

d. <u>Use of Cash</u>. The Debtor is authorized, subject to the terms of this Order, to use the following cash:

(a) All funds held by the Debtor on the Petition Date;

(b) All receipts, receivables, and collections received or to be received on or after the Petition Date from the sale of inventory or the disposition or use of the Pre-Petition Collateral or Post-Petition Collateral (as defined herein); provided that Debtor shall account to Lender for all such receipts.

2. <u>Accounting and Information</u>. The Debtor shall provide an accounting to Lender monthly, on the 5th day following the conclusion of the month to which the reporting is directed, of the Debtor's cash position and the use of Lender's cash collateral, including income and

expenses. The Debtor shall provide information and reasonable access to the books and records of Debtor and to Lender and its professionals.

3. Cash Collections and Deposits.

a. Cash Collateral Accounts. The Debtor shall maintain all Debtor-In-Possession accounts with a financial institution acceptable to Lender. Lender is granted a replacement lien on all deposit accounts and all monies deposited therein, which lien shall secure Debtor's Adequate Protection Obligations. All the deposit accounts described in Paragraph 3a shall be referred to as the Accounts.

b. Deposits. If the Debtor receives any cash, checks, wires, direct deposits or other payments, which are collections, income, proceeds, products, rents or profits of Lender's Pre-Petition Collateral or Post-Petition Collateral (as defined herein), the Debtor shall deposit the same in the Accounts within two banking days after receipt.

4. Continued Operations.

a. Budget. The operating expenses proposed to be paid by the Debtor as set forth on the Budget attached as **Exhibit A** (the "Permitted Expenses") are expressly subject to available funds on deposit. Expenditures or accruals may vary up to ten percent (10%) from the line items estimated in the Budget, so long as total disbursements and accruals do not exceed the amounts set forth in the Budget, plus 5% variance without the written consent of Lender. Debtor may utilize such additional amounts for reasonable and necessary expenses of operation as approved by the Lender in writing. Nothing herein shall be construed to permit Debtor to overdraft any DIP account at any time during the pendency of this

Order. Debtor may modify the Budget only with the written consent of the Lender. To the extent the Budget is modified, the modified Budget must be filed with the Court.

b. The Debtor is authorized to use cash collateral only to fund the Permitted Expenses.

5. Pre-Petition Debt. Nothing herein permits Debtor to pay indebtedness or transfer property to vendors, contractors, customers, or other persons whose debt may have been incurred pre-petition, except as specifically detailed in the Permitted Expenses and as permitted by Court order. Debtor shall not, without prior Court Order entered after at least five (5) days' notice to Lender, enter into any agreement to permit reclamation of goods, or return any inventory to any creditors for application against pre-petition indebtedness (under § 546 of the Bankruptcy Code or otherwise), or consent to any creditor taking any setoff or recoupment against any of its pre-petition indebtedness based upon any such return, pursuant to § 553(b)(1) of the Bankruptcy Code or otherwise.

6. Professional Fees and Administrative Expenses. Nothing in this Order (i) shall excuse any person from complying with the Bankruptcy Code and Bankruptcy Rules, and the Bankruptcy Local Rules of this Court and the guidelines of the United States Trustee with respect to applications for professional compensation and reimbursement of expenses, or (ii) shall be deemed to authorize or approve the receipt or payment of any retainer, advance fee, or compensation to any other professional employed by the Debtor. Debtor shall not pay any fees or expenses to any attorney, accountant, consultant, advisor, broker, manager, or other professional governed by 11 U.S.C. §§ 327 through 331 except upon further order of this Court after notice and opportunity for hearing to Lenders and the U.S. Trustee.

7. <u>Waiver of Surcharge Rights</u>. Lender's Pre-Petition and Post-Petition Collateral shall NOT be subject to any claim or surcharge pursuant to 11 U.S.C. §506(c) for any cost of administration and such waiver shall be binding on Debtor, all creditors of Debtor and/or any subsequently appointed trustee.

8. <u>Grant of Liens for Adequate Protection.</u>

a. <u>Pre-Petition Collateral</u>. "Pre-Petition Collateral" means all of (i) the Debtor's interest in any property which is granted to Lender under the agreements and documents executed by the Debtor pre-petition, to the extent that Debtor's interest therein was acquired by Debtor prior to the Petition Date, and (ii) as to which Lender's lien and security interests are perfected, valid, and not avoidable as of the Petition Date, and (iii) the proceeds, products, rents, fees, charges, accounts, payments for use or occupancy or profits thereof acquired after the Petition Date, to the extent consistent with 11 U.S.C.§ 552(b).

b. <u>Preservation of Lien on Pre-Petition Collateral</u>. Debtor has stipulated that Lender's lien claims are allowed, perfected, not avoidable, and secured under 11 U.S.C. § 506(a) by Pre-Petition Collateral, and Lender shall remain entitled to the priority of its lien and security interest in the Pre-Petition Collateral, subject to any party in interest (except for the Debtor) filing an adversary proceeding contesting such lien and security interest as provided herein by no later than August 1, 2016.

c. <u>Post-Petition Collateral</u>. "Post-Petition Collateral" shall mean the Debtor's interest in all property which (i) first arises, is purchased, or acquired, or exists

after the Petition Date, and (ii) is not Lender's Pre-Petition Collateral or the proceeds, products, rents or profits thereof under 11 U.S.C. § 552(b)

d. <u>Grant of Lien as Adequate Protection</u>. To secure the Debtor's Adequate Protection Obligations under this order and under Bankruptcy Code §§ 361(2), 362(d), and 363(e), Lender is hereby granted a continuing lien upon all of the Pre-Petition Collateral, and a first priority lien on all of the Post-Petition Collateral, and all of the Accounts subject only to the Carve Out described in paragraph 8(f) hereof.

e. <u>Exclusions</u>. Lender's Post-Petition Collateral excludes: all causes of action and bankruptcy avoidance powers enumerated in Chapter 5 of Title 11, and any proceeds thereof.

f. <u>Carve Out Expenses</u>. The lien on Post-Petition Collateral is subordinated to the fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).

g. <u>No Cross-Collateralization</u>. Nothing in this Order shall be deemed to grant to Lender a lien on Post-Petition Collateral for the purpose of securing indebtedness to Lender which first arose before the Petition Date, except Debtor's Adequate Protection Obligations.

h. <u>Perfection of Security Interests</u>. All liens granted or to be granted to Lender on the Post-Petition or Pre-Petition Collateral are deemed perfected and no further notice, filing, recording, control agreement, bailment arrangement, or order shall be required to effect such perfection under other State or Federal law. This Order shall be deemed sufficient and conclusive evidence and perfection of the liens granted hereunder. Lender is authorized to (but need not) file or record

photostatic copies of this Order as financing statements and deeds of trust. Such photostatic copies may be filed in any county or jurisdiction, and any recording officer is authorized to record such copies. If Lender shall, in Lender's sole discretion, choose to file financing statements, deeds of trust, or other documents or otherwise confirm perfection of such liens, the automatic stay is hereby modified to permit Lender to effect such filings and recordations, and all such financing statements, deeds of trust, or similar documents shall be deemed to have been filed or recorded on the date of the entry of this Order.

9. <u>Grant of Priority Claim to Lender</u>.

a. <u>Priority Claim</u>. Nothing in this Order shall be deemed a finding with respect to adequate protection (as that term is described in § 361 of the Bankruptcy Code), of the interest of Lender in the Pre-Petition Collateral. In addition to being secured as provided herein, if, notwithstanding the provision of this Order, Lender shall have an allowable claim for the Adequate Protection Obligations, it shall constitute an expense of administration in Debtor's bankruptcy case under Bankruptcy Code §§ 503(b)(1), 362(d), and 363(e), which administrative expense shall have the priority of § 507(b), senior to all other expenses of administration under Bankruptcy Code § 507(a)(1) except the administrative claim granted to Lender in connection with debtor-in-possession financing, subject to Paragraph 8f hereof.

b. <u>Bankruptcy Trustee and Carve Out</u>. The priority of the Debtor's Adequate Protection Obligations to Lender as described herein shall continue notwithstanding the appointment of a Chapter 11 Trustee (subject to 11 U.S.C. §§

726 and 507(b) or other applicable law), or the conversion of this case to a case under Chapter 7 of the Bankruptcy Code; provided that any priority claim allowable to Lender under Paragraph 9a of this Order is subordinated to the Carve Out Expenses described in Paragraph 8f hereof.

10. <u>Termination</u>.

a. <u>Termination Date</u>. The Debtor's right to continue use of Lender's Pre-Petition Collateral shall terminate upon the first to occur of the following dates (the "Termination Date"): (i) a Lender notifies Debtor that Debtor has violated any term or condition of this Order; (ii) the effective date of any confirmed Chapter 11 Plan in this case, or the conversion of this case to a case under Chapter 7 of the Bankruptcy Code, or the appointment of a trustee or an examiner in this case; (iii) the sale of all or a substantial part of the stock or assets of the Debtor, or the merger or business combination of the Debtor, without Lender's written consent; (iv) 5:00 p.m. on December 16, 2016, unless extended beyond that date by Court order or stipulation between Debtor and Creditor filed with the Court, (v) Debtor files a plan of reorganization to which Lender does not consent, or (vi) this Order is terminated or modified by order of this Court.

b. <u>Remedies for Lender</u>. Upon the Termination Date then Lender may notify the Debtor, the U.S. Trustee that Lender is objecting to use of cash collateral. Upon sending of such notice by facsimile, Lender may file an emergency motion for adequate protection or for relief from the automatic stay or other relief, and may set such motion for expedited hearing (subject to the Court's calendar) upon not less than three (3) business days' notice to the Debtor and the U.S. Trustee and

        Nothing herein shall prohibit Lender from seeking to terminate the automatic stay, voting against any plan of reorganization of the Debtor or seeking other appropriate relief which it, in its sole and absolute discretion, may wish to pursue.

    c. <u>Debtor's Motion</u>. Debtor retains a right to move this Court notwithstanding Lender's objections, for an order pursuant to Bankruptcy Code § 105 or § 363(c)(2)(B) authorizing the use of collateral or cash collateral and for other relief, and the Debtor's motion may be set for expedited hearing (subject to the Court's calendar), upon not less than three (3) days notice to Lenders and the U.S. Trustee.

11.   <u>Successors and Assigns</u>. The provisions of this Order and Debtor's stipulations and agreements herein shall be binding upon the Debtor, all creditors, Lender and their respective successors and assigns, including any trustee or representative of the estate hereafter appointed or elected in this Chapter 11 case or in any subsequent Chapter 7 case.

12.   <u>Continuing Effect</u>. If all or any of the provisions of this Order are hereafter modified, vacated, or stayed by subsequent order of this Court or any other court, or on appeal, such stay, modification, or vacation shall not affect (i) the validity or priority of any obligations owed to Lender by the Debtor incurred prior thereto, or (ii) the validity, enforceability, or priority of any lien or priority of Lender with respect to the Debtor's Adequate Protection. Any Adequate Protection Obligations of Debtor arising prior to the effective date of such stay, modification, or vacation, shall be governed by the original provisions of this Order.

13.   <u>Service of Pleadings</u>. Debtor shall serve a copy of such pleadings or report, including monthly operating reports, heretofore or hereafter filed with the Court concurrently with the filing by Debtor, on the U.S. Trustee, Lender, and their counsel.

14. <u>Reservation of Rights</u>. The Debtor, Lender and all parties in interest shall be deemed to reserve their respective rights and remedies under pre-petition agreements, and other applicable law. Nothing in this Order shall be deemed to prejudice, waive, or release the rights and remedies of the Debtor, or any party in interest arising under the Bankruptcy Code or other applicable law, including any avoiding actions and defenses thereto. Any adequate protection payments, priorities, liens, or other matters provided for under this Order shall not constitute an admission or determination that Lender is oversecured or undersecured. Nothing herein shall affect the validity, extent or priority of any lien held by any taxing authority.

# # #

AGREED:

By: */s/ C. Daniel Roberts*
C. Daniel Roberts
State Bar # 16999200
1602 E. Cesar Chavez
Austin, Texas 78702
512 494-8448
512 494 8712 -fax
And
Kell C. Mercer
State Bar # 24007668
1602 E. Cesar Chavez
Austin, Texas 78702
512 627 3512
512 597 0767 - fax

ATTORNEYS FOR DEBTOR
AND DEBTOR IN POSSESSION


AGREED:

WALLER LANSDEN DORTCH AND DAVIS, LLP

By: */s/ Eric J. Taube*
Eric J. Taube
State Bar No. 19679350
Mark C. Taylor

State Bar No. 19713225
100 Congress Ave., Suite 1800
Austin, Texas 78701
512 685 6400
512 685 6417 (FAX)
Eric.Taube@wallerlaw.com
mark.taylor@wallerlaw.com

ATTORNEYS FOR THE ED RACHAL FOUNDATION

| | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| Starting Cash at 4/3/2016 | 7,215 | | | | | | | | | 7,215 |
| DIP financing - Initial | 250,000 | | | | | | | | | 250,000 |
| DIP financing - Additional | | 600,000 | 600,000 | | | | | | | 1,200,000 |
| Cash receipts | 472,923 | 626,056 | 800,620 | 2,024,307 | 2,821,026 | 1,903,759 | 1,891,465 | 1,953,415 | 1,267,286 | 13,760,857 |
| Subtotal | 730,138 | 1,226,056 | 1,400,620 | 2,024,307 | 2,821,026 | 1,903,759 | 1,891,465 | 1,953,415 | 1,267,286 | 15,218,072 |
| **Cost of Goods Sold** | | | | | | | | | | |
| Primary Material Providers (COD) | 306,510 | 436,383 | 895,708 | 1,524,077 | 1,209,322 | 1,203,658 | 1,168,298 | 845,969 | 547,445 | 8,137,370 |
| Shipping | | 10,000 | 11,000 | 12,500 | 12,500 | 12,500 | 11,000 | 11,000 | 11,000 | 91,500 |
| Payments to Prepetition Critical Vendors | | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 400,000 |
| Subtotal | 306,510 | 496,383 | 956,708 | 1,586,577 | 1,271,822 | 1,266,158 | 1,229,298 | 906,969 | 608,445 | 8,628,870 |
| Gross Margin | 423,628 | 729,673 | 443,912 | 437,730 | 1,549,203 | 637,601 | 662,167 | 1,046,446 | 658,841 | 6,589,202 |
| **Operations** | | | | | | | | | | |
| Payroll | 260,000 | 262,750 | 275,000 | 275,000 | 275,000 | 417,500 | 275,000 | 275,000 | 275,000 | 2,590,250 |
| Certifications | 54,900 | 245,000 | 160,000 | 85,000 | | | | | 117,000 | 661,900 |
| Marketing | 5,500 | 3,167 | 667 | 1,467 | 667 | 1,667 | 667 | 667 | 667 | 15,133 |
| Travel & Sales Costs | 9,341 | 26,288 | 26,247 | 28,022 | 23,178 | 19,847 | 22,697 | 22,883 | 19,247 | 197,748 |
| Service & Warranty | 20,030 | 10,000 | 10,000 | 10,000 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 107,530 |
| Trustee & Misc Expenses | | 5,000 | 5,000 | 4,875 | 5,000 | 5,000 | 4,875 | 5,000 | 5,000 | 39,750 |
| Insurance | 11,385 | 10,728 | 16,420 | 16,420 | 16,420 | 16,420 | 16,420 | 16,420 | 16,420 | 137,052 |
| Office Leases | 1,648 | 1,648 | 1,648 | 1,648 | 1,648 | 1,648 | 1,648 | 1,648 | 1,648 | 14,832 |
| Office Supplies/Expenses | 5,500 | 6,618 | 5,143 | 5,143 | 5,143 | 5,143 | 5,143 | 5,143 | 5,143 | 53,622 |
| Rent | | 10,200 | 10,200 | 10,200 | 10,643 | 22,200 | 10,500 | 10,500 | 10,500 | 94,500 |
| Research & Development | 10,000 | 10,000 | 10,000 | 10,000 | 60,000 | 12,500 | 12,500 | 12,500 | 12,500 | 150,000 |
| Temp Labor | 2,716 | | | | | | | | | 2,716 |
| Telephone & Utilities | 13,294 | 13,294 | 13,294 | 13,294 | 13,294 | 13,294 | 13,294 | 13,294 | 13,294 | 119,646 |
| | 394,314 | 604,692 | 533,619 | 461,069 | 427,550 | 526,719 | 374,244 | 374,555 | 487,919 | 4,184,679 |
| Monthly net cash increase (decrease) | 29,314 | 124,981 | (89,707) | (23,339) | 1,121,654 | 110,882 | 287,924 | 671,891 | 170,922 | 2,404,523 |
| Cumulative | 29,314 | 154,295 | 64,588 | 41,249 | 1,162,903 | 1,273,785 | 1,561,709 | 2,233,600 | 2,404,523 | 2,404,523 |

EXHIBIT A